UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCAS KLINGERMAN, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> JONATHAN MCHUGH, EVAN : <br> FREILER, DAVID DONKOCHIK, : <br> KYLE SCHAUER, and BOROUGH : <br> OF MOUNT CARMEL, : <br> : <br> : <br> : <br> Defendants. : | JURY TRIAL DEMANDED <br><br> NO.: _____ <br><br><br><br> (JUDGE _____) |

## COMPLAINT

Plaintiff Lucas Klingerman, by and through his attorneys, Barry H. Dyller, Theron J. Solomon, Caelie M. Sweigart and Dyller & Solomon, LLC, brings this action related to the deprivation of his protected rights and in support thereof, alleges as follows:

## JURISDICTION AND VENUE

1. This action arises out of violations of the United States Constitution brought pursuant to 42 U.S.C. §§ 1983 and 1985, and the common law.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

4. Plaintiff Lucas Klingerman is an adult individual domiciled in Northumberland County, Pennsylvania.

5. Defendant Jonathan McHugh ("Defendant McHugh") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

6. Defendant Evan Freiler ("Defendant Freiler") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

7. Defendant David Donkochik ("Defendant Donkochik") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

8. Defendant Kyle Schauer ("Defendant Schauer") was at all relevant times employed by Defendant Borough of Mount Carmel as a police officer.

9. Defendant Borough of Mount Carmel ("Defendant Borough") is a municipality located in Northumberland County, Pennsylvania.

## FACTUAL BACKGROUND

The Overarching Conspiracy

10. Upon information and belief, for the period of at least on or about June 15, 2018, to December 3, 2021 and beyond, in Northumberland County, within the Middle District of Pennsylvania, Defendants McHugh, Freiler, Donkochik, and Schauer, while acting under color of law, willfully combined, conspired and agreed with each other and others to injure, threaten, and intimidate detainees in and around Mt. Carmel, in the free exercise and enjoyment of a right and privilege, secured under the Constitution and laws of the United States, namely the right to be free from unreasonable searches and seizures, which includes the right to be free from the use of unreasonable force by a law enforcement officer.

11. Upon information and belief, it was part of the conspiracy that: (a) when making certain arrests and while having arrestees in their custody, Defendants McHugh, Freiler, Donkochik, and Schauer used excessive force on the arrestees, including but not limited to, punching, kicking, choking, tasing, beating, and body-slamming; (b) Defendants McHugh, Freiler, Donkochik, and Schauer took steps to ensure that video of the arrests was not captured by police cameras, or if footage that incriminated them was captured, failed to take steps to ensure that footage was preserved; (c) Defendants McHugh, Freiler, Donkochik, and Schauer falsely reported that

3

arrestees acted in a manner requiring violence and then falsely charged arrestees with criminal offenses, including but not limited to aggravated assault, resisting arrest, and related offenses to conceal their own use of violence; and, (d) Defendants McHugh, Freiler, Donkochik, and Schauer threatened arrestees with more violence.

<u>The September 30, 2021 Events in Furtherance of the Conspiracy</u>

12. On September 30, 2021, Mr. Klingerman failed to appear for a court date in an unrelated matter and a warrant was issued for his arrest.

13. That night, Mr. Klingerman was on a street in the Borough of Mount Carmel when he heard an instruction to freeze from Defendants McHugh and Freiler.

14. Mr. Klingerman did not immediately freeze, and, instead, ran for one block before stopping and putting his hands in the air.

15. Although Mr. Klingerman had already followed the officers' instruction and surrendered himself with his hands raised in the air, Defendant Freiler approached and hit him twice with the drive-stun feature of his taser when he presented no danger to Defendant Freiler or Defendant McHugh.

16. Defendant McHugh took no action to prevent Defendant Freiler from deploying his taser.

17. Defendant McHugh then searched Mr. Klingerman and found

suboxone in his possession.

18. Defendant Freiler placed Mr. Klingerman under arrest and put him in a police vehicle with his hands cuffed behind his back.

19. Defendant Freiler then transported Mr. Klingerman to the Mount Carmel Police Department.

20. Upon arrival, Defendants McHugh and Freiler left Mr. Klingerman in the back of the police vehicle for approximately 35 minutes with his hands still cuffed behind his back.

21. Defendants McHugh and Freiler then removed Mr. Klingerman from the vehicle, still handcuffed, and Defendant McHugh proceeded to beat Mr. Klingerman.

22. While still in the parking lot of the Mount Carmel Police Department, Defendant McHugh grabbed Mr. Klingerman by the handcuffs, pulled up on the chain to force him forward toward the pavement, and swept his legs out from underneath him, causing him to fall face forward on to the pavement.

23. Due to the handcuffs still being secured, Mr. Klingerman could not brace himself for this fall.

24. As a result of the fall, Mr. Klingerman felt an immediate pop and an immense pain in the area of right clavicle, which was later diagnosed as a

fracture.

25. After the fall, Defendant McHugh lifted Mr. Klingerman up by his hair and started slapping and punching him in the face.

26. While Mr. Klingerman begged and pleaded for him to stop, Defendant McHugh stood over him, continuing the beating.

27. As Mr. Klingerman pleaded with Defendant McHugh to stop and for Defendant Freiler to help him, Defendant Freiler stood by and watched, doing nothing to stop the beating despite the realistic and reasonable opportunity to intervene.

28. During this extensive beating, Defendant McHugh grabbed Mr. Klingerman by the neck, slammed him off a wall, lifted him up by his hair, punched him in the face, and strangled him to where he almost lost consciousness.

29. Near the end of the extensive assault, Mr. Klingerman was strip searched before Defendant McHugh ordered Defendant Freiler to place him in a holding cell.

30. While Mr. Klingerman stood naked and beaten in the Mount Carmel Police Department, Defendant McHugh, while standing nose to nose with him, said, "If I had it my way I'd make you disappear and no one would have to deal with you again."

31. This was not the first time that Defendant McHugh made such threats to Mr. Klingerman and he fully believed that Defendant McHugh would follow through on his word that night.

32. Neither Defendant McHugh, nor Defendant Freiler, intervened to prevent or limit the other from using unreasonable force against Mr. Klingerman despite having the opportunity to do so.

33. Except for the initial tasing, this entire beating occurred on the property of the Mount Carmel Police Department, a safe haven for beatings and unlawful behavior in furtherance of the conspiracy.

34. After the beating subsided, Mr. Klingerman was confined to the Northumberland County Jail ("NCJ").

35. Medical staff at NCJ recorded Mr. Klingerman's injuries in the form of notes and photos which, upon information and belief, were given to Northumberland County Detectives.

36. At NCJ, Mr. Klingerman became increasingly sore from his injuries and his arm was locking up.

37. Mr. Klingerman was transferred to Geisinger Danville where imaging confirmed the fracture in his right clavicle.

38. On June 15, 2023, Defendant McHugh, Defendant Donkochik, and Defendant Schauer were indicted in federal court for the conspiracy

described above, as well as for actions similar to, and including, those taken against Mr. Klingerman on September 30, 2021 (the "Indictment").

39. At least fifteen (15) specific instances of such violence against arrestees involving Defendant McHugh are outlined in the Indictment.

40. These specific instances of violence occurred in 2019, 2020, and 2021, while Defendant McHugh was employed by Defendant Borough as a police officer.

41. Overall, the Indictment identifies twenty-two (22) instances of the use of unreasonable force and/or false reports by Defendant McHugh, Defendant Donkochik, and Defendant Schauer.

42. Upon information and belief, Defendant Freiler has engaged in acts similar to those outlined in the Indictment and in concert with the indicted officers.

43. Defendant Borough's policymakers, including, but not limited to, the Mayor, Council, and/or Chief of Police, knew or should have known about the practice within the Mount Carmel Borough Police Department of permitting the use of unreasonable and excessive force against detainees and arrestees, as such practice was permanent and well-settled.

## COUNT ONE
Unreasonable and Excessive Force
Mr. Klingerman v. Defendant McHugh
(42 U.S.C. § 1983)

44. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

45. Defendant McHugh's use of force and failure to intervene while Defendant Freiler used unreasonable force, as set forth above, constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

46. Defendant McHugh's actions were objectively unreasonable in light of the facts and circumstances confronting him.

47. Defendant McHugh knew that Mr. Klingerman did not pose a threat to him, Defendant Freiler, or any other member of the public.

48. Defendant McHugh's conduct was a deprivation, under color of state law, of rights guaranteed to Mr. Klingerman under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

49. As a result of Defendant McHugh's violations of Mr. Klingerman's constitutional rights, Mr. Klingerman suffered substantial injuries and damages.

## COUNT TWO
Unreasonable and Excessive Force
Mr. Klingerman v. Defendant Freiler
(42 U.S.C. § 1983)

50. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

51. Defendant Freiler's use of force and failure to intervene while Defendant McHugh used unreasonable force, as set forth above, constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

52. Defendant Freiler's actions were objectively unreasonable in light of the facts and circumstances confronting him.

53. Defendant Freiler knew that Mr. Klingerman did not pose a threat to him, Defendant McHugh, or any other member of the public.

54. Defendant Freiler's conduct was a deprivation, under color of state law, of rights guaranteed to Mr. Klingerman under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

55. As a result of Defendant Freiler's violations of Mr. Klingerman's constitutional rights, Mr. Klingerman suffered substantial injuries and damages.

## COUNT THREE
Conspiracy - Unreasonable and Excessive Force
Mr. Klingerman v. Defendant McHugh, Defendant Freiler, Defendant Donkochik, and Defendant Schauer
(42 U.S.C. §§ 1983 and 1985)

56. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

57. While acting in their positions as police officers for Defendant Borough, Defendant McHugh, Defendant Freiler, Defendant Donkochik, and Defendant Schauer engaged in a conspiracy to deprive individuals of their constitutional rights by using excessive force on detainees in the form of punching, kicking, choking, tasing, beating, and body-slamming.

58. Defendant McHugh's use of unreasonable force and failure to intervene, and Defendant Freiler's use of unreasonable force and failure to intervene, as set forth above, deprived Mr. Klingerman of his civil rights in furtherance of the conspiracy.

59. As members of the conspiracy, Defendant Donkochik and Defendant Schauer are also responsible for their co-conspirators' actions in furtherance of the conspiracy.

60. As a result of the conspiracy and violations of Mr. Klingerman's constitutional rights in furtherance of the conspiracy, as set forth above, Mr. Klingerman suffered substantial injuries and damages.

# COUNT FOUR
*Monell* – Custom of Permitting Use of Unreasonable Force
Mr. Klingerman v. Defendant Borough
(42 U.S.C. § 1983)

61. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

62. Defendant Borough had policies, customs and/or practices that resulted in the violation of Mr. Klingerman's rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

63. Specifically, Defendant Borough had a custom of permitting its police officers to use unreasonable and excessive force against detainees and arrestees.

64. This custom was widespread and constituted the standard operating procedure of Defendant Borough.

65. Defendant Borough's policymakers acquiesced in the Mount Carmel Borough police officers' use of unreasonable and excessive force, while failing to supervise and/or reprimand such officers.

66. Defendant Borough's acquiescence to the Mount Carmel Borough Police Department's custom of allowing the use of unreasonable and excessive force against detainees and arrestees, and its failure to supervise its police officers amount to deliberate indifference to the rights of persons whom its police officers encounter.

67. Defendant Borough's policies, customs and/or practices directly caused and were a moving force behind the constitutional deprivations described above.

68. As a result of Defendant Borough's custom of permitting the use of unreasonable and excessive force against detainees and arrestees, and its failure to supervise its police officers, Mr. Klingerman suffered serious injuries and damages.

69. Defendant Borough therefore violated Mr. Klingerman's rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

COUNT FIVE
Mr. Klingerman v. Defendants McHugh and Freiler
(Battery)

70. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

71. Defendants McHugh and Freiler committed the acts described above with the intent to cause a harmful or offensive contact with Mr. Klingerman's body and/or with the intent to put Mr. Klingerman in reasonable and immediate apprehension of a harmful or offensive contact with his body.

72. The actions of Defendants McHugh and Freiler directly resulted in harmful and/or offensive contact with Mr. Klingerman's body.

73. As a result of the actions of Defendants McHugh and Freiler, Mr. Klingerman suffered substantial injuries and damages.

## COUNT SIX
Mr. Klingerman v. Defendants McHugh and Freiler
(Assault)

74. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

75. Defendants McHugh and Freiler intended to put Mr. Klingerman in reasonable and immediate apprehension of a harmful or offensive contact with his body.

76. As a result of the actions of Defendants McHugh and Freiler, Mr. Klingerman was put in reasonable and immediate apprehension of such contact.

77. As a result of the actions of Defendants McHugh and Freiler, Mr. Klingerman suffered substantial injuries and damages.

WHEREFORE, Mr. Klingerman demands judgment as follows:

A. As to Counts One, Two, Three, Five, and Six, an amount to be determined at trial, including punitive damages, plus interest;

B. As to Count Four, an amount to be determined at trial plus interest;

C. For Plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

D. For the costs and disbursements incurred in this action; and

E. For such other and further relief as the Court deems just and proper.

    DYLLER & SOLOMON, LLC

    /s/ Barry H. Dyller
    /s/ Theron J. Solomon
    /s/ Caelie M. Sweigart
    Attorneys for Plaintiff
    88 North Franklin Street
    Wilkes-Barre, PA  18701
    (570) 829-4860

## JURY DEMAND

Plaintiff demands a trial by jury.